UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MARK COLIN JENNINGS II,

          Plaintiff,                   Case No. 1:17-cv-555

v.                                   Honorable Robert J. Jonker

UNKNOWN BENNETT et al.,

          Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed without prejudice for misjoinder with respect to Defendants Roy, Hall, and MacKay. Plaintiff's action will be dismissed for failure to state a claim with respect to Defendants Bennett, Britton, Rohrbacher, Trinity Food Service, and Dalton.

**Factual Allegations**

Plaintiff Mark Colin Jennings II is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Michigan. The events about which he complains occurred there during June of 2017. Plaintiff sues the following ECF personnel: Lieutenant Unknown MacKay, Corrections Officers Unknown Bennett, Unknown Britton, Unknown Roy, and Travis Hall; Nurse Jennifer Dalton; Food Service Supervisor Unknown Rohrbacher; and Trinity Food Service.

The first incident about which Plaintiff complains occurred on June 4, 2017. On that date, Plaintiff examined his lunch and discovered he had been served one carrot slice, one 3/4 inch by 3/4 inch piece of turkey meat, and one raw biscuit. (Compl., ECF No. 1, PageID.7.) Plaintiff took his tray to Defendant Rohrbacher and asked for the correct portion. Rohrbacher instructed Plaintiff to eat it or throw it away, but Plaintiff would not receive another serving.

Plaintiff alleges that he then suffered an involuntary muscle contraction spasm (he suffers from Huntingtons Chorea disorder) and dropped his tray. Rohrbacher, according to Plaintiff, saw things differently because she exclaimed: "He just threw the tray at me!"[1] At that point, Defendants Bennett and Britton intervened.

Plaintiff contends that Defendants Bennett and Britton saw the incident and knew that Plaintiff had not thrown his tray. Defendants Bennett and Britton also saw things differently. Defendant Britton reported that Plaintiff threw his tray on the ground towards Defendant Rohrbacher. (Misconduct Report, ECF No. 1-1, PageID.29.) Defendant Bennett reported that

---

[1]In Defendant Rohrbacher's written statement regarding the incident she said "Inmate dumped tray at my feet." (Memorandum, ECF No. 1-1, PageID.35.)

Plaintiff intentionally dropped his tray at Defendant Rohrbacher's feet. (Memorandum, ECF No. 1-1, PageID.34.)

Defendants Bennett and Britton handcuffed Plaintiff and brought him to segregation. Plaintiff contends they repeatedly used excessive force while cuffing and transporting him, causing Plaintiff severe and painful injuries. In response to Plaintiff's complaints regarding the excessive force, one of the officers stated: "You're a liar!" (Compl., ECF No. 1, PageID.8.) The other stated: "This is what you get for molesting children!" (*Id.*)

The next day, Plaintiff saw Defendant Dalton to obtain treatment for the injuries sustained at the hands of Bennett and Britton. Plaintiff alleges that Dalton refused to treat him for his injuries and falsified the medical reports to cover-up the excessive use of force.

Defendant Britton filed a misconduct report against Plaintiff relating to the June 4 incident. Britton accused Plaintiff of threatening behavior, a major misconduct, and creating a disturbance, a minor misconduct. (Misconduct Report, ECF No. 1-1, PageID.29.) On June 6, 2017, Hearing Officer Timothy Baywal conducted a hearing. Based on his review of witness statements and video of the incident, Hearing Officer Baywal concluded that, although Plaintiff intentionally dropped the tray thereby creating a disturbance, Plaintiff did not throw the tray in a threatening manner. (Misconduct Hearing Report, ECF No. 1-1, PageID.31-33.) Accordingly, Hearing Officer Baywal found Plaintiff not guilty of the major misconduct but guilty of the minor misconduct. (*Id.*) Plaintiff received a sanction of fifteen days loss of privileges.[2] In a June 15, 2017 letter to ECF

---

[2]Unless otherwise specified, all of the following privileges are lost by a prisoner as a result of a "loss of privileges" sanction:

A. Day room, activity room, TV room, study room, or other designated area where similar activities occur.
B. Exercise facilities, such as yard, gym, and weight room/pit.
C. Group meetings, such as Bible class and Jaycees, but not including primary religious worship service; this

Inspector Clouse, Plaintiff further reports that Defendants Britton and Bennett, upon submitting the allegedly falsified misconduct reports, told Plaintiff: "this is what you get for suing Hall and Stone." (June 15, 2017 Correspondence, ECF No. 1-1, PageID.54.)

Plaintiff then shifts to an entirely separate incident on June 10, 2017. (Compl., ECF No. 1, PageID.13.) On that date, Defendant Roy wrote a Class III, minor misconduct report for violation of posted rules against Plaintiff for passing legal supplies with inmate Michael Anthony Grabinski. Plaintiff does not deny that he and inmate Grabinski were exchanging legal supplies, but he explains that he required Grabinski's assistance to type the complaint in this case because of the injuries Plaintiff sustained on June 4. On June 12, 2017, Assistant Resident Unit Supervisor Brinkley found Plaintiff guilty of the charged offense and sanctioned Plaintiff with 8 days loss of privileges.

Plaintiff then turns to an incident on June 14, 2017. On that date, Defendant Hall wrote an allegedly falsified misconduct for insolence against Plaintiff. According to Plaintiff, on May 31, 2017, while waiting in the medication line, he asked Defendant Hall whether he had

---

does not apply to group therapy.
D. Out-of cell hobbycraft activities.
E. Kitchen area, including microwave, ice machine, and hot water dispenser.
F. Direct access to general library (not law library; prisoners in segregation shall continue to have books delivered to them consistent with PD 04.05.120 "Segregation Standards").
G. Movies.
H. Music practice; musical instruments.
I. Radio, tape player, television, and portable media player as set forth in facility procedures.
J. Leisure time activities offered pursuant to PD 05.03.104 "Leisure Time Activities", except as approved by Warden or designee.
K. Telephone, except calls to the Office of Legislative Corrections Ombudsman and to return calls from an attorney upon request of the attorney.
L. Visiting. This applies only if hearing officer identified in the hearing report that the misconduct occurred in connection with a visit, and only with the visitor named in the hearing report.

MDOC Policy Directive 03.03.105E (eff. 4/9/2012).

answered Plaintiff's interrogatories in another pending case. Defendant Hall, however, claimed that Plaintiff insolently asked if Hall had a good attorney. (Compl., ECF No. 1, PageID.17; Misconduct Report, ECF No. 1-1, PageID.49; Statement of Defense, ECF No. 1-1, PageID.50; Declaration of James Cross, ECF No. 1-1, PageID.52; Grievance, ECF No. 1-1, PageID.68.) At the June 18, 2017 hearing, Plaintiff alleges that Defendant MacKay directly ordered Plaintiff to not practice any further litigation against Defendant Hall and threatened to punish Plaintiff for disobeying a direct order if Plaintiff failed to comply. (Compl., ECF No. 1, PageID.18.) Plaintiff does not provide information regarding the disposition of that misconduct.

Plaintiff's complaint purports to state the following claims:

1. an Eighth Amendment claim against Defendants Bennett, Britton, Rohrbacher, and Trinity for conspiring to use and then using excessive force in cuffing and transporting him to segregation on June 4, 2017;

2. an Eighth Amendment claim against Defendants Bennett, Britton, Rohrbacher, and Trinity for conspiring to deny and then denying Plaintiff sufficient nutrition;

3. an Eighth Amendment claims against Defendant Dalton for deliberate indifference to Plaintiff's serious medical needs;

4. a First Amendment claim against Defendants Bennett, Britton, Rohrbacher, and Trinity for conspiring to use and then using force in retaliation for Plaintiff's request for more food;

5. a First Amendment claim against Defendants Bennett, Britton, Rohrbacher, and Trinity for conspiring to deny and then denying Plaintiff sufficient nutrition in retaliation for Plaintiff's request for more food;

6. a First Amendment claim against Defendants Bennett, Britton, Rohrbacher, and Trinity for conspiring to pursue and then pursuing the false threatening behavior/creating a disturbance misconducts in retaliation for Plaintiff's request for more food and Plaintiff's lawsuit against Defendants' colleagues;

7.      a First Amendment claim against Defendant Roy for directly interfering with Plaintiff's access to the courts;

8.      a First Amendment claim against Defendant Hall for writing a false misconduct against Plaintiff in retaliation for Plaintiff's lawsuit against Defendant Hall; and,

9.      a First Amendment claim against Defendant MacKay for direct interference with Plaintiff's access to the courts by threatening to discipline Plaintiff for misconduct if Plaintiff pursued litigation against Defendant Hall.

(Compl., ECF No. 1.)

.      Plaintiff asks the Court to enter a declaratory judgment stating that Defendants have violated his constitutional rights, to enter permanent injunctive relief directing Defendants to stop violating Plaintiff's constitutional rights, and to award compensatory and punitive damages against each Defendant. Plaintiff also asks the Court to grant several types of temporary injunctive relief (ECF No. 3). Most recently, Plaintiff has asked the Court to allow him to file an amended complaint to add additional claims against Defendant Hall and to add claims against corrections officer Joshua Stone. The claims Plaintiff seeks to add are claims that are presently pending in *Jennings v. Crompton*, No. 1:16-cv-921 (W.D. Mich.), but are on the verge of being dismissed without prejudice for failure to exhaust administrative remedies.

## Discussion

### I.      Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative

with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 CHARLES ALLEN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE CIVIL § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged;

whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Michigan Dep't of Corrections*, 2007 WL 4465247, *3 (E.D. Mich. December 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person -- say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions -- should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3rd Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Tuft v. Texas,* 397 F. App'x 59, 61 (5th Cir. 2010) ("In addition, 'the creative joinder of actions' by prisoner plaintiffs to avoid the strictures of the Prison Litigation Reform Act of 1995 . . . should be discouraged.*"); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998) ("We doubt that Congress intended that § 1915(g) could be so facilely circumvented by the creative joinder of actions."); *Shephard v. Edwards*, 2001 WL 1681145, *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Plaintiff's first allegations concern the actions of Defendants Bennett, Britton, Rohrbacher, and Trinity, with regard to denying Plaintiff adequate nutrition on June 4, 2017 (claims 2 and 5 as identified above). Plaintiff claims the Defendants are liable as conspirators as to that claim as well as claims 1, 4, and 6. Such liability would be joint. *See, e.g., Non-Ferrous Metals Inc. v. Saramar Aluminum Co.*, 25 F.R.D. 102, 104 (N.D. Ohio, 1960) ("Conspirators are jointly and

severally liable and all may be joined . . . ."). Thus, the parties and claims are properly joined under Rule 20 and Rule 18.

For purposes of determining the propriety of joinder with respect to the remaining parties, the Court must determine whether Plaintiff's remaining claims against all of the other Defendants are part of the same series of transactions and occurrences as Plaintiff's first claims against the conspirators. With respect to Plaintiff's claim against Defendant Dalton, the claim arises from the failure to treat the very injuries caused by the excessive use of force at issue in claims 1 and 4. The claim is proximate in time and place, and facts relating to the nature and severity of Plaintiff's injuries are common to claims against all five Defendants. With respect to Defendants Roy, Hall, and MacKay, however, the claims are factually independent. They are distinct in time, place, and participants and, thus, are not properly joined to the claims against Defendants Bennett, Britton, Rohrbacher, Trinity, and Dalton.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("Parties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms as are just."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and

potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

The actions about which Plaintiff complains occurred during June of 2017, well within the three-year period of limitations. Those claims are not at risk of being time-barred. Plaintiff therefore will not suffer gratuitous harm if the improperly joined Defendants are dismissed. Accordingly, the Court will exercise its discretion under Rule 21 and dismiss, for misjoinder, Plaintiff's claims against Defendants Roy, Hall, and MacKay, without prejudice to the institution

of new, separate lawsuits by Plaintiff against those Defendants.[3] *See Coughlin*, 130 F.3d at 1350 ("'In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs'"); *Carney*, 2008 WL 485204, at *3 (same).

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d

---

[3]Plaintiff is cautioned that he must limit all future actions to Defendants who are transactionally related to one another.

468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff alleges that Defendants have violated the Eighth Amendment and the First Amendment.[4]

## A. Conspiracy

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by

---

[4]Plaintiff also contends that Defendants conduct may violate the Michigan constitution. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a few moments involving three people. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined because of or subjected to objectionable treatment by these prison officials. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680.

Plaintiff alleges no facts to support his conclusory allegation of conspiracy with regard to the lunch Plaintiff was served on June 4, 2017. He similarly alleges no facts to support his claim that Defendant conspired to use excessive force. Finally, with regard to Plaintiff's claim of concerted action to file a false misconduct against Plaintiff, the only factual support provided is the consistency of the Defendants' descriptions of the event. Yet, even the witness statements offered by Plaintiff indicate that Plaintiff dropped the tray. Each observer formed his or her own opinion as to the reason for the drop. Some concluded it was involuntary; others concluded it was

purposeful. To infer conspiracies from the common conclusion reached by some observers ignores the at least equally likely possibility that Defendants Bennett, Britton, and Rohrbacher, and the hearing officer who viewed the video, described the circumstances similarly because they all saw the same thing. Put simply, Plaintiff fails to state a plausible claim of conspiracy.

B.    Inadequate nutrition

"[T]he Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 960, 954 (6th Cir. 1987). Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, No. 01–17355, 2003 WL 21436162, at *1 (9th Cir. June 16, 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04–CV–1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007)

(deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

In *Richmond*, the Sixth Circuit determined that a prisoner who was deprived of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not state a viable Eighth Amendment claim, because he "does not allege that his health suffered as a result of not receiving the meals." *Richmond*, 450 F. App'x at 456. In *Cunningham*, the Sixth Circuit determined that providing a prisoner only one meal a day for over two weeks was not an Eighth Amendment violation, because the meals provided were adequate to sustain normal health. *Cunningham*, 667 F.2d at 566. Plaintiff missed only one meal. He does not allege that his health suffered as a result of the deprivation, or that the other meals he did receive were inadequate to sustain his health. Consequently, Plaintiff does not state a plausible claim. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

C.    Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged

retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

## 1. Protected conduct

The filing of a civil rights action regarding prison conditions is certainly protected conduct. *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002). The filing of a prison grievance is also constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

In Plaintiff's complaint he alleges two different instances of protected conduct in describing these Defendants retaliatory actions: (1) Plaintiff's complaint to Defendant Rohrbacher about the raw biscuit and request for more food (Compl., ECF No. 1, PageID.14-15, ¶41); and (2) Plaintiff's lawsuit against Corrections Officers Hall and Stone (June 15, 2017, Plaintiff's Affidavit, ECF No. 1-1, PageId.54). For purposes of this analysis, the Court will accept that the informal complaint about Plaintiff's lunch and the lawsuit against Hall and Stone constitute protected conduct.[5]

---

[5]There is certainly some question as to whether an informal complaint to a food service supervisor regarding a meal would constitute protected conduct. *See, e.g., Brown v. Woods*, No. 2:14-cv-136, 2015 WL 8675971 at *2 (W.D. Mich. Dec. 11, 2015) ("Plaintiff's other actions, which included filing kites complaining about corrections officers and making verbal complaints to supervisors, do not constitute protected conduct."); *Hull v. Baker*, No. 1:11-cv-623, 2013 WL 1818612 at *2 (W.D. Mich. Apr. 29, 2013) ("The Sixth Circuit Court of Appeals has not recognized informal kites as protected conduct."); *but see Clark v. Johnson*, 413 F. App'x 804, 813 (6th Cir. 2011) ("The problem . . . is not that [the] complaint was informally made, but that it has not been shown to have had any merit.") Moreover, Plaintiff's claims against Hall and Stone are on the verge of dismissal for lack of exhaustion. *See Jennings v. Crompton*, No. 1:16-cv-921 (W.D. Mich.) (Report and Recommendation, ECF No. 76, PageID.726) ("Plaintiff's argument that he did not "file" his complaint until November 18, 2016, . . . is frivolous.") The lack of merit in Plaintiff's claims against Hall and Stone, as Plaintiff has raised them, calls into question their protected status as well. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (court acknowledged prisoners "'undisputed First Amendment right to file grievances against prison officials on his own behalf'" but not if "the grievances are frivolous . . . .").

## 2.    Adverse action

The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable of deterring a person of ordinary firmness*"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x  529, 542 (6th Cir. 2003) (threat to change drug test results).  However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations.  *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.  Here, Plaintiff alleges that Defendants took three different adverse actions against him: (1) the insufficient lunch portion on June 4, 2017; (2) the excessive use of force by Defendants Bennett and Britton; and (3) the "false" misconduct allegations.

### a.    Insufficient lunch portion

Although a tiny lunch might not rise to the level of an Eighth Amendment violation, tampering with a prisoner's food could certainly constitute an action sufficiently adverse to deter the exercise of that prisoner's First Amendment rights.  *Bell v. Johnson*, 308 F.3d 594, 605 (6th Cir. 2002).  Plaintiff fails to allege, however, that Defendants Bennett, Britton, Rohrbacher, or Trinity did the tampering.  Presumably, someone gave Plaintiff the minuscule lunch portions, but Plaintiff does not allege that it was any of these Defendants.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must

make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Because Plaintiff does not allege that any of the individual Defendants actually provided Plaintiff the inadequate lunch, he has failed to connect them to the adverse action.

Perhaps Plaintiff intended to connect the adverse action to Trinity as the likely employer of the person who shorted Plaintiff's lunch portion. An understanding of how Trinity might be liable for violating § 1983 is helpful to evaluating the sufficiency of Plaintiff's allegations. As a starting point, Trinity is susceptible to suit under § 1983 as one acting under color of state law. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) ("It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison

inmates may be sued under § 1983 as one acting 'under color of state law.'"), *abrogation on other grounds recognized by Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 559 (6th Cir. 2014). As a corporate entity, Trinity can only act through its employees.[6] Nonetheless, Trinity cannot be held vicariously liable for the § 1983 violations of its employees under a theory of *respondeat superior*. *Street v. Corrections Corp of America*, 102 F.3d 810, 818 (6th Cir. 1996) ("'A defendant cannot be held liable under section 1983 on a *respondeat superior* or vicarious liability basis. *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978). *Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.'"). Instead, a private entity acting under color of state law is only liable when the execution of its practice, policy, or custom inflicts the injury or serves as the moving force behind the deprivation of the plaintiff's rights. *See Baker v. Stevenson*, 605 F. App'x 514, 520 (6th Cir. 2015); *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012); *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). Plaintiff makes no such allegation against Trinity with respect to the inadequate lunch. Thus, his allegations fall short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Plaintiff's claim against Trinity for the insufficient lunch, therefore, is properly dismissed.

Alternatively, Plaintiff might argue that Defendants Bennett, Britton, and Rohrbacher are responsible for the inadequate lunch portion because they failed to correct the problem after Plaintiff complained. "'Causation in the constitutional sense is no different from causation in the

---

[6]*See In re NM Holdings Co.*, LLC, 622 F.3d 613, 620 (6th Cir. 2010) (quoting *Upjohn Co. v. New Hampshire Ins. Co.*, 476 N.W.2d 392, 400 (Mich. 1991) ("'A corporation can only act through its employees . . . .'")).

common law sense.'" *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012).[7]  To demonstrate

causation here, Plaintiff must show "that the adverse action was proximately caused by an

individual defendant's acts . . . ." *Id.*  Instead, Plaintiff alleges that the Defendants did not respond

to Plaintiff's complaint to his satisfaction.  As the *King* court explained:

> Having the right to control the offending employee is not enough, simply being aware
> of the misconduct is not enough, and even administrative approval of an action later
> found to be retaliatory, without more, is not enough. [*McQueen v. Beecher Cmty.*
> *Sch.*, 433 F.3d 460, 470 (6th Cir.2006)]; *see also Siggers v. Campbell*, 652 F.3d 681,
> 695 (6th Cir.2011) (granting summary judgment for warden who merely approved
> notices filed against the inmate). The supervisor must be said to have "directly
> participated, encouraged, authorized or acquiesced in the claimed retaliatory acts" to
> be liable under § 1983. [*Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999)].

*King*, 680 F.3d at 696-697.  At most Plaintiff has alleged that the individual Defendants approved

of the adverse action after the fact.  He has not even alleged that Bennett or Britton, as ECF

corrections officers, had the authority or responsibility to correct the problem.  Mere failure to

correct a problem is insufficient to establish the necessary causation.  Therefore, Plaintiff has failed

to allege that Defendants Bennett, Britton, or Rohrbacher caused the adverse action of an inadequate

lunch portion.

### b.    Excessive use of force

Threatening the use of physical force constitutes adverse action that might deter a

person of ordinary firmness from continuing protected conduct.  *Thaddeus-X*, 175 F.3d at 398;

*Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011).  If threats of physical force are

sufficient, then certainly the use of excessive force described by Plaintiff is sufficient as well.

---

[7]Proximate causation of the adverse action is a separate issue from the "causal connection" analysis at the third
step of the *Thaddeus-X* analysis.  The causal connection at the third step of the *Thaddeus-X* analysis is an inquiry into
the defendant's motivation, not whether the defendant caused the adverse action.  *Thaddeus-X*, 175 F.3d at 394.

### c.     "False" misconduct charges

"[I]t would trivialize the First Amendment to allow plaintiffs to bring First Amendment retaliation claims for any adverse action no matter how minor." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (internal quotations omitted). "Whether an alleged adverse action is sufficient to deter a person of ordinary firmness 'is generally a question of fact,' but when the alleged adverse action is 'inconsequential' resulting in nothing more than a '*de minimis* injury,' the claim is properly dismissed as a matter of law." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583, 84 (6th Cir. 2012) (citing *Bell*).

Under Michigan Department of Corrections policy, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. MDOC Policy Directive 03.03.105, ¶ B (eff. Apr. 9, 2012). A prisoner convicted of a minor misconduct may be sanctioned with one or more of the following sanctions, with the maximum reserved for only the most serious or persistent violators: toplock (confinement to quarters) not to exceed five days, for all violations arising from a single incident; loss of privileges not to exceed 30 days for Class II misconducts or 15 days for Class III misconducts, for all violations arising from a single incident; assignment of extra duty, not to exceed 40 hours for Class II misconducts or 20 hours for Class III misconducts, for all violations arising from a single incident; restitution and/or disgorgement of funds/ill-gotten gains; counseling and reprimand. MDOC Policy Directive 03.03.105, Attachment D.

The Sixth Circuit has held that 14 days' loss of privileges, a short period in toplock, and extra duty are *de minimis* sanctions that would not deter a person of ordinary firmness from pursuing a grievance or other First Amendment protected activity. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (citing *Thaddeus–X*, 175 F.3d at 396–97). The Michigan district

courts have followed *Ingram* in cases where the punishment imposed was similar or less severe that the 14-day loss of privileges imposed in *Ingram*. *See, e.g., Gordon v. Benson*, No. 1:12-CV-295, 2012 WL 2522290, at *13 (W.D. Mich. June 28, 2012) (plaintiff's seven-day loss of privileges is not sufficiently adverse to state a retaliation claim); *Patterson v. Godward*, No. 2:08-CV-78, 2012 WL 652470, at *4 (W.D. Mich. Feb. 28, 2012), *aff'd*, 505 F. App'x 424 (6th Cir. 2012) (minor misconduct conviction was not adverse action when the most severe sanction that the plaintiff could have received for a minor misconduct conviction was 15 days' loss of privileges); *Catanzaro v. Carr*, No. 10-CV-14554, 2011 WL 5008380, at *4 (E.D. Mich. Sept. 22, 2011), *report and recommendation adopted*, No. 10-14554, 2011 WL 5008357 (E.D. Mich. Oct. 20, 2011) (a total of 17 days loss of privileges for 2 minor misconduct convictions did not constitute adverse action).

Here, Plaintiff was cleared of the major misconduct, threatening behavior, and found guilty of a minor misconduct, creating a disturbance. Although the "conviction" was a Class II misconduct, Plaintiff was sanctioned at a level commensurate with a Class III misconduct: only 15 days' loss of privileges. On the strength of the authority cited above, Plaintiff has failed to allege that the "false" misconduct charges constituted adverse action.

### 3. Retaliatory motive

Finally, having alleged protected conduct (the food complaint or civil lawsuit) and adverse action (excessive use of force by Defendants Bennett and Britton), Plaintiff must connect the two by alleging a retaliatory motive.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506

23

(C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

With respect to Defendant Bennett's and Britton's excessive use of force, Plaintiff merely alleges the ultimate fact of retaliation. He has not presented any facts to support his conclusion that Defendants retaliated against him because he complained about his lunch or filed a lawsuit against Defendants' colleagues.[8] To the contrary, Plaintiff alleges that Defendants indicated they used excessive force because Plaintiff was "a liar" and "a child molester." (Compl., ECF No. 1, PageID.8, ¶18.) Plaintiff states that Defendants used corporal punishment because of "Plaintiff['s] crime." (*Id.*, PageID.15, ¶42.) Plaintiff also suggests that Defendants were motivated by a desire to "prey upon a vulnerable adult . . . ." (*Id.*, PageID.9, ¶25.) Plaintiff states that Defendants Bennett and Britton employed corporal punishment "out of retaliation for speaking on

---

[8]Plaintiff does attribute retaliatory motivations to other actions by these Defendants. For example, Plaintiff claims Defendants Bennett and Britton filed false accusations against Plaintiff in retaliation for Plaintiff's lawsuit against Corrections Officer Hall and Corrections Officer Stone. *See* (Grievance ECF 2017 17061863 27A, ECF No. 1-1, PageID.59) ("My grievance is CO Britton, CO Bennett and FSS Rohrbacher are providing misstatements of fact to authorities in an effort to retaliate against me for suing [their] coworkers CO Hall and CO Stone."); (Plaintiff's Sworn Statement, ECF No. 1-1, PageID.54) (regarding the allegedly false accusations, Plaintiff states that Defendants Britton and Bennett said "this is what you get for suing Hall and Stone.") But there is no indication in the complaint that Plaintiff attributes the excessive use of force to that motivation. Plaintiff's grievance regarding the excessive use of force is silent as to a retaliatory motive. (Grievance, ECF 2017 067182 172, ECF No. 1-1, PageID.62-63.)

24

the raw Biscuit and lack of meat product and for having an incurable disease . . . ." (*Id.*, PageID.14, ¶41.) He alleges no facts from which to reasonably infer that Defendants' actions were motivated by his lunch complaint. He merely concludes that because he made the complaint before the excessive use of force, their actions must have been motivated by the complaint. The Sixth Circuit, however, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010). This is especially true where, as here, the plaintiff is a prolific filer of grievances and complaints. *Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"). Plaintiff merely alleges temporal proximity between Defendants' conduct and his lunch complaint. Such allegations are insufficient to state a retaliation claim.

D.      Other violations

Plaintiff's complaint is sprinkled with claims that the Defendants have violated federal criminal statutes. Plaintiff alleges that Defendants Bennett, Britton, Rohrbacher, and Trinity violated 18 U.S.C. §§ 241 (Conspiracy against rights) and 242 (Deprivation of rights under color of law). (Compl., ECF No. 1, PageID.15, ¶41.) Plaintiff alleges that Defendants Bennett and Britton violated 18 U.S.C. § 1512 (Tampering with a witness). (*Id.*, ¶43.) "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. University of Chicago*, 441 U.S. 677, 688 (1979). There is no private cause of action for violation of these federal criminal statutes. See *United States*

*v. Oguaju*, 76 F. App'x 579, 581 (6th Cir. 2003) ("Oguaju has no private right of action under either [18 U.S.C. §§ 241 or 242]."); *Whiteus v. Granholm*, No. 07-14145, 2008 WL 4185912 at *5 (E.D. Mich. Sep. 5, 2008) (citing *Drake v. Enyart*, No. 3:06CV-217-S, 2006 WL 3524109, *5 (W.D.Ky.2006), for the proposition that §1512 does not give rise to a private right of action).

Plaintiff also alleges that Defendants Bennett and Britton punished Plaintiff corporally, in violation of 42 U.S.C. §§ 10802-10805. (Compl., ECF No. 1, PageID.15, ¶42.) Those statutory sections are part of the federal Protection and Advocacy for Individuals with Mental Illness Act of 1986 (the PAIMI Act). The PAIMI Act assists States in the creation of a system of protection and advocacy for individuals with mental illness. 42 U.S.C. § 10801. The PAIMI Act clearly authorizes legal actions. 42 U.S.C. § 10807. But, it does not authorize legal actions by the mentally-ill individuals, it authorizes legal action by the system, agency, or organization that PAIMI creates to protect and advocate for those suffering from mental illness. *Id.*; *see also Sardakowski v. Ivandick*, 653 F. App'x 596 (10th Cir. 2016) (affirming district court's dismissal as frivolous a private action under PAIMI); *Lawson v. Nat'l Church Residencies*, Case No. 5:15-cv-332, 2016 WL 2643155, at *2 (N.D. Fla. Apr. 6, 2016) ("PAEVIII does not create an enforceable private right of action."), report and recommendation accepted and adopted, Case No. 5:15cv332-MW/GRJ, 2016 WL 3566856, at *1 (N.D. Fla. June 27, 2016); *Darnell v. Jones*, No. CIV-12-1065, 2014 WL 4792144, at *3 n.4 (W.D. Okla. Sept. 24, 2014) ("PAIMI Act authorizes certain protection and advocacy systems to bring suit regarding access to patient records; its provisions do not provide a private cause of action to" plaintiff who is an inmate) (citations omitted), *aff'd*, 610 Fed.Appx. 720 (10th Cir. 2015); *Romeo v. Aid to Developmentally Disabled, Inc.*, No. 11-CV-6340, 2013 WL 5532649, at *2 (E.D.N.Y. Oct. 3, 2013) (granting motion to dismiss on ground that the individual

defendants were "not state actors" for purposes of 42 U.S.C. §§ 1983, 1985, 1986 and "that PAIMI create[d] no privately enforceable federal rights"); *Burke v. North Dakota Dep't Corr. & Rehab.*, No. 1:07-cv-4, 2007 WL 1456217, at *8 (D.N.D. May 16, 2007) (language of PAIMI "reveals no intent on the part of Congress to provide private remedy to review individual decisions of the protection and advocacy organizations regarding whether to provide services to particular individuals").

Plaintiff has failed to state any claim for violation of these federal statutes.

### E. Excessive force claim

Plaintiff alleges that Defendants Bennett and Britton used excessive force in restraining and transporting him on June 4. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of restraints must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 130 S. Ct. at 1178. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7 (citing *Whitley*, 475 U.S. at 321); *accord Griffin v. Hardrick*, 604 F.3d 949, 953-54 (6th Cir. 2010); *McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

Plaintiff has adequately alleged that Defendants Bennett and Britton used force maliciously to cause harm on June 4, 2017.[9] But Plaintiff's allegations do not stop there. Plaintiff notes that he has filed grievances against Defendants Bennett and Britton, that he intends to follow through with all three steps of the grievance procedure, but that he has not done so yet. (Compl.,

---

[9]Plaintiff also sought to impose liability on Defendants Rohrbacher and Trinity for that use of force based on his allegations of conspiracy. For the reasons stated above, he has failed to state such a claim.

ECF No. 1, PageID.13-14, ¶¶ 37-38.)  Indeed he could not have completed the three-step grievance process between June 4, 2017, when the alleged excessive force was used, and June 19, 2017, when he signed and mailed his complaint.  *See* MDOC Policy Directive 03.02.130 (eff. 7/9/2007).  Plaintiff asks the Court to permit him to proceed despite his failure to exhaust.

The PLRA requires state prisoner to follow and exhaust all applicable state grievance before filing suit in federal court.  42 U.S.C. § 1997(e)(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *see also Mattox v. Edelmon*, 851 F.3d 583, 590 (6th Cir. 2017).  "A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by [an affirmative defense], the complaint is subject to dismissal for failure to state a claim." *Jones v. Bock*, 549 U.S. 199, 215 (2007).  That is the case here.  While Plaintiff was not required to plead exhaustion, *id.*, he in fact pleaded that he had not exhausted administrative remedies.  As a result, Plaintiff's allegations show that the relief he seeks under § 1983 is barred by the affirmative defense of failure to exhaust.  Accordingly, he has failed to state a claim against Defendants Bennett and Britton for the excessive use of force.

F.    Deliberate indifference claim

Plaintiff alleges that Defendant Dalton has violated the Eighth Amendment by demonstrating deliberate indifference to Plaintiff's serious medical needs. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.  *Estelle v.*

*Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Plaintiff's allegations suffice to state such a claim against Defendant Dalton; but, the allegations also demonstrate that relief for that claim under § 1983 would be barred by Plaintiff's failure to exhaust. Accordingly, Plaintiff's claim against Defendant Dalton is also properly dismissed for failure to state a claim.

III.    Preliminary injunctive relief

Plaintiff has also filed a motion for temporary restraining order and preliminary injunction. (ECF No. 3.) Plaintiff asks the Court to enter an order:

1.    enjoining any direct contact between the individual Defendants and Plaintiff;

2.    enjoining any contact between any ECF personnel, Trinity personnel, or Corizon Health Care Services personnel, on the one hand, and Plaintiff, on the other, unless Plaintiff consents and the interaction is recorded;

3.    enjoining ECF personnel from interfering with Plaintiff's mail or other documents;

4.    mandating that ECF Deputy Warden Rick Sharp be present for any shakedowns or inspections relating to Plaintiff and that the incidents be recorded;

5.    enjoining ECF personnel from "messing up" or "mixing up" Plaintiff's legal documents;

6.    preserving all documents and records relating to the June 4 incident and the subsequent misconduct hearings;

7.    protecting Plaintiff's witnesses;

8.    enjoining ECF personnel from denying Plaintiff's law library requests;

9.    compelling Defendants to respond to Plaintiff's complaint;

10.     compelling Defendants to produce all critical incident reports regarding the June 4 incident;

11.     restraining Defendants Bennett and Britton from using force to cause pain or injury;

12.     restraining Defendants Bennett, Britton, Hall, and Roy from speaking about Plaintiff's criminal conviction;

13.     preventing ECF personnel from acting on behalf of Defendants;

14.     enjoining retaliatory acts;

15.     enjoining threatening acts;

16.     enjoining Defendant Dalton from providing medical care to Plaintiff; and,

17.     compelling ECF and Corizon to provide the Court with Plaintiff's medical record.

(ECF No. 3, PageID.118-121.)

The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Id.* These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also Ne. Ohio Coal*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the

unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432 at 438 n.3, (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing at this juncture. All of the claims Plaintiff raises are properly dismissed for misjoinder or for failure to state a claim.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578. It is far from clear that a damage remedy would not compensate Plaintiff for the alleged wrongs.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286-87. That showing has not yet been made here. Accordingly, the preliminary injunctive relief that Plaintiff requests will be denied.

IV.    Motion to amend

Plaintiff has asked the Court for permission to file an amended complaint. (ECF No. 7) Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, prior to 21 days after service of the complaint, Plaintiff is entitled to amend his complaint as a matter of course, even if he intends to add parties by way of his amendment. *See Broyles v. Correctional Medical Services, Inc.*, No. 08-1638, 2009 WL 3144241, *3-4 (6th Cir. Jan. 23, 2009); *Pegeuse v. PNC Bank, N.A.*, 306 F.R.D. 540, 544-546 (E.D. Mich. 2015). So long as Plaintiff remains within the deadline set forth in Rule 15(a)(1), he may file a first amended complaint as a matter of course. Leave of court is not required. Accordingly, Plaintiff's motion will be denied as moot.

Plaintiff could have filed an amended complaint instead of filing his motion, but, he did not, nor did he supply one with his motion. Once judgment is entered, "[i]nstead of meeting only the modest requirements of Rule 15, the claimant must meet the requirements for reopening a case established by Rules 59 or 60." *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir. 2010).

Even though Plaintiff did not supply an amended complaint, he has indicated a series of amendments he would like to pursue. Plaintiff's request is premised on: (1) the pending dismissal of his claims against Defendant Hall and corrections officer Joshua Stone in *Jennings v. Crompton*, 1:16-cv-921 (W.D. Mich), for failure to exhaust administrative remedies; (2) his recognition that he has failed to exhaust administrative remedies for the claims he raised in this case; and (3) his expectation that his claims in this case will be dismissed without prejudice as well. Based on those premises, Plaintiff would like to add to his complaint the now-exhausted claims

against Hall and Stone that he raised in *Jennings v. Crompton*[10] and, when he has exhausted his administrative remedies with respect to the claims now before the Court, amend his complaint to add those claims to this action again.

For the reasons set forth in § I, *infra*, Plaintiff's claims against Hall and Stone would not be properly joined to his claims against Bennett, Britton, Rohrbacher, Trinity, and Dalton. They are even more separate from the claims against Defendants Bennett, Britton, Rohrbacher, Trinity, and Dalton, with respect to time, place and participants, than are the claims the improperly joined claims against Defendants Roy, Hall, and MacKay. Moreover, in a case where Plaintiff has failed to exhaust any of his claims in the original complaint, it would be inappropriate to permit him to add back such claims if and when they have been exhausted. *See Mattox*, 851 F.3d at 593 (noting that *Cox v. Mayer*, 332, F.3d 422 (6th Cir. 2003), stood for the proposition that a plaintiff who had failed to exhaust *any* of his claims before filing suit in federal court could not save those claims once exhausted by supplementing his complaint under Rule 15(d)). Accordingly, any attempt to add the claims as contemplated by Plaintiff would be futile.[11]

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Roy, Hall, and MacKay will be dismissed without prejudice for misjoinder. The Court further determines that the remaining Defendants will be dismissed

---

[10]Plaintiff states that these claims arise from Defendant Hall's and Stone's excessive use of force and retaliation on June 29, 2016, and July 8, 2016. (Motion to Amend, ECF No. 7, PageID.138.)

[11]In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend, including: "futility of amendment. . . ." *Id* at 182. If a claim would be properly dismissed, amendment to add the claim would be futile. *Thiokol Corp. v. Michigan Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993).

for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's request for preliminary injunctive relief and his motion to amend will be denied.

An Order consistent with this Opinion will be entered.

Dated: August 29, 2017          /s/ Robert J. Jonker
                                ROBERT J. JONKER
                                CHIEF UNITED STATES DISTRICT JUDGE